**RESOLUTION TRUST CORPORATION, Plaintiff,**

v.

**Ralph FEFFER, Jr., et al., Defendants.**

**Misc. No. 92–210.**

United States District Court, District of Columbia.

June 4, 1992.

On Motion for Reconsideration July 10, 1992.

Suzanne Rigby, Sr. Atty., Resolution Trust Corp., Washington, D.C., Paul M. Laurenza, John H. Korns, James E. Topinka, Pettit & Martin, Washington, D.C., for Resolution Trust Corp.

David L. White, Jennings, Strouss & Salomon, Phoenix, Ariz., for Robert Amos, Ralph Feffer, Jr., John Schroeder and Milan Srnka.

Theresa A. Kristovich, McKenna & Fitting, Los Angeles, Cal., for Edward and Gregory Janos.

William J. Maledon, Meyer Hendricks Victor Osborn & Maledon, Phoenix, Ariz., for Leonard H. Goldman.

David L. Lansky, O'Connor Cavanagh, Phoenix, Ariz., for Lincoln J. Ragsdale.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

The Resolution Trust Corporation ("RTC") has petitioned the Court for expedited summary enforcement of eight subpoenas *duces tecum* served upon Ralph Feffer, Jr., Robert Amos, Leonard Goldman, Edward Janos, Gregory Janos, Lincoln J. Ragsdale, John Schroeder, and Milan Srnka, former directors and officers of Sun State Savings and Loan Association ("Sun State"), a failed savings association.[1] Having considered the arguments raised in the parties' pleadings and at a hearing held on June 4, 1992, RTC's petition is denied.

## I. BACKGROUND

### A. Statutory Background

In response to the savings and loan crisis, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which created the RTC and granted it broad powers and duties. Specifically, Congress conferred upon the RTC much of the authority afforded the Federal Deposit Insurance Corporation ("FDIC"), including conservatorship and receivership powers and the right to issue subpoenas. *See* 12 U.S.C. § 1818(n). In fulfilling its broad functions, the RTC is specifically instructed:

To conduct the operations of the Corporation in a manner which—

(i) maximizes the net present value return from the sale or other disposition of institutions described in subparagraph (A) or the assets of such institutions;

(ii) minimizes the impact of such transactions on local real estate and financial markets;

(iii) makes efficient use of funds obtained from the Funding Corporation or from the Treasury;

(iv) minimizes the amount of any loss realized in the resolution of cases; and

(v) maximizes the preservation of the availability and affordability of residential real property for low- and moderate-income individuals.

12 U.S.C. § 1441a(b)(3)(C).

### B. Factual Background

The Federal Savings and Loan Insurance Corporation was appointed receiver for Sun State, and the RTC subsequently became receiver for Sun State Savings and Loan Association, FSA, the successor institution to Sun State. In its capacity as receiver, the RTC is conducting an investigation into possible claims against respondents for alleged misconduct. Although the RTC has never accused respondents of fraud or malfeasance, the agency is investigating potential causes of action sounding in negligence.

On December 23, 1991, the RTC issued an Order of Investigation, which provides in relevant part:

At the time the Resolution Trust Corporation ("RTC") was appointed conservator for Sun State of Scottsdale, Arizona, an investigation of the former directors, officers, accountants, attorneys, appraisers and escrow agents was opened by the RTC Investigation Section and the Legal Division to determine whether such former directors, officers, accountants, attorneys, appraisers and escrow agents may be liable to the RTC, in its corporate capacity, or as receiver for Sun State, as a result of their actions as directors, officers, accountants, attorneys, appraisers and escrow agents or as a result of the services they performed for Sun State.

Exhibit ("Exh.") 1 to Petition of Resolution Trust Corporation for Expedited Summary Enforcement of Administrative Subpoenas Duces Tecum ("RTC Petition").

---

1. The RTC has sought expedited summary enforcement because the statute of limitations period on the underlying, potential civil claims could expire as early as June 14, 1992.

Pursuant to the Order of Investigation, various subpoenas were issued against the respondents on January 21, 1992. The subpoenas request material regarding Sun State as well as information concerning the financial status of each respondent. Specifically, the subpoenas seek eighteen categories of personal, financial documents: personal state and federal tax returns for the years 1987–1990; state and federal tax returns in any corporation in which respondent has more than a 5% ownership interest for the years 1987–1990; bank books, bank statements of accounts on any account on which respondent's name appears for the years 1987 to the present; all statements relating to ownership of an interest or shares in any mutual fund or bond fund for the period from 1988 to present; all statements of account regarding any participation in or ownership of an individual retirement account, 401 K, annuity, or any retirement benefit plan of any sort of which respondent is a beneficiary; a copy of all certificates of deposit with any bank, credit union, or financial institution on which respondent's name appears; all life insurance policies that have been enforced at any time during the period of 1987 to the present, wherein respondent is the named insured; registration and/or title to any automobiles, trucks, mobile homes, boats, or airplanes on which respondent's name appears as the owner; all stock certificates in any publicly traded company in which respondent possesses an ownership interest; all stock certificates in any "closed" or private corporation in which respondent has an ownership interest; all mortgage statements relating to the ownership of real property in which respondent has an interest; all contracts for the purchase or sale of real property, entered into since January 1, 1987; all bonds, debentures, treasury bills, or notes in which respondent has an interest; all employment contracts since January 1, 1988 to which respondent has been a party; all partnership agreements in any partnership in which respondent is a limited, general, or special partner; all trust instruments in any trust in which respondent is either the grantor or possesses a beneficial interest; and "[a]ll

records of any sort relating to [respondent's] association or employment with American Holding Company, American Federal Savings & Loan Association, American Service Corporation, American Service Corporation Investment, Inc., including memoranda, correspondence, reports, loan files, notes, and any other documents that relate in any way to the business of those entities." Exh. 2 to RTC Petition, ¶ 2. Although each of the respondents has produced documents relating to Sun State, each has refused to produce the personal, financial information requested in paragraph 2 of the subpoenas.

## II. DISCUSSION

■ It is well-settled that Congress may grant broad subpoena authority to administrative bodies. As the Supreme Court stated in the leading case, *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 652, 70 S.Ct. 357, 363–64, 368, 94 L.Ed. 401 (1950):

> [The administrative agency] has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.... Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.

Accordingly, the Court's role in reviewing an administrative subpoena "is a strictly limited one." *FTC v. Texaco*, 555 F.2d 862, 871–72 (D.C.Cir.) (*en banc*), *cert. denied sub nom. Standard Oil of California v. FTC*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). Although "a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory pow-

er[,].... it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Morton Salt*, 338 U.S. at 652, 70 S.Ct. at 369.

■ Respondents do not dispute that the RTC "has statutory authority to issue subpoenas to former directors and officers and others to determine whether as a result of their dealings with failed savings associations such persons may be liable for damages." RTC Petition, at 13. Rather, respondents contend, the financial information RTC seeks is not discoverable for the stated purpose of determining the cost-effectiveness of civil litigation. Respondents' argument is persuasive.

During the course of discovery in pending civil litigation, courts have routinely denied access to information concerning an individual's financial affairs for the purpose of discerning a defendant's ability to satisfy a judgment, reasoning that such material is irrelevant to the subject matter of the suit. *See, e.g., Bogosian v. Gulf Oil Corp.*, 337 F.Supp. 1228, 1230 (E.D.Pa. 1971). Although the rules of civil procedure do not apply to restrict or control administrative subpoenas,[2] even the broad statutory powers afforded the RTC are insufficient to justify this extreme and unprecedented invasion of personal privacy.

In *Federal Trade Commission v. Turner*, 609 F.2d 743, 744, *reh'g denied*, 614 F.2d 294 (5th Cir.1980), the Fifth Circuit Court of Appeals considered "the question of the power of the Federal Trade Commission ["FTC"] ... to use an investigational subpoena to ascertain whether the subject of a cease and desist order has sufficient financial resources to make worthwhile a civil damage action for consumer redress." In denying the FTC's request, the Court reasoned that "[t]he amount of Turner's assets is not relevant to an inquiry into whether a violation of the law exists." *Id.* at 745. In addition, the Court expressly rejected the FTC's claim that "Turner's wealth is germane because its investigation was instituted to determine the practical feasibility of the consumer redress action against Turner." *Id.* As that Court concluded, "Because the subpoenaed information is not reasonably relevant to any authorized F.T.C. inquiry, the public need for this information does not justify the pretrial invasion of Turner's privacy." *Id.* at 746.

In the instant case, the financial status of respondents is irrelevant to the RTC's stated inquiry. The clearly articulated purpose of its investigation is "to determine whether such former directors, officers, accountants, attorneys, appraisers and escrow agents may be liable to the RTC, in its corporate capacity, or as receiver for Sun State, as a result of their actions as directors, officers, accountants, attorneys, appraisers and escrow agents or as a result of the services they performed for Sun State." Exh. 1 to RTC Petition. The Order of Investigation nowhere states, nor does it even suggest, that the RTC intends to investigate respondents to determine whether they have sufficient assets to satisfy a judgment—in the event an action is filed—and the issue of respondents' liability is entirely distinct from the questions of whether, and how much, respondents could pay.

Moreover, the Court cannot conclude, as RTC urges, that the agency has been granted the authority to conduct an investigation of respondents' financial status solely to determine the cost-effectiveness of bringing a claim.[3] The fact that the RTC is directed to "minimize[ ] the amount of any loss realized in the resolution of cases"[4] cannot be read to mean that, in the instant

---

**2.** *See, e.g., Bowles v. Bay of New York Coal & Supply Corp.*, 152 F.2d 330, 331 (2d Cir.1945).

**3.** At the hearing, RTC suggested in passing that the agency is also trying to discern whether respondent have wrongfully transferred assets. RTC has never before advanced such a claim. In fact, in the Reply of Resolution Trust Corporation to Opposition to Petition for Summary Enforcement of RTC Subpoenas, which was filed on June 2, 1992, RTC only argues that the agency is seeking information concerning respondents' financial status to determine whether to initiate civil actions.

**4.** *See* 12 U.S.C. § 1441a(b)(3)(C).

action, the RTC can roam through respondents' personal, confidential, financial records only to determine whether it is worthwhile to pursue civil litigation.[5] In effect, the RTC is asking this Court to endorse a process whereby the government entity may arbitrarily discriminate between rich and poor, for implicit in the RTC's summary request is the suggestion that if the respondents are wealthy, the RTC will initiate civil actions against them, and if they are not cost-analysis worthy, the RTC will forego its right to pursue such claims. Even affording the agency the deference it is due, the Court cannot countenance a process that wholly ignores culpability or responsibility and focuses entirely on an individual's ability to pay.

Finally, the cases on which the RTC relies are inapposite. For example, in *RTC v. American Casualty Co.*, 787 F.Supp. 5 (D.D.C.1992), the agency sought extensive information regarding possible insurance coverage for the officers and directors of eleven failed savings associations nationwide. In the instant case, respondents have already provided that information to the RTC and are withholding entirely different, personal material. By the same token, *RTC v. Ernst & Young*, Misc. No. 91–398, 1992 WL 77255 (D.D.C. Jan. 29, 1992), involved a large accounting partnership,[6] and the subpoenas issued in that case were the result of a stipulation between the parties, prohibited the release of tax returns, and ordered disclosure of only the most current financial statements.

The Court certainly recognizes the magnitude of the savings and loan scandal and the RTC's corresponding responsibilities in pursuing misconduct. Nonetheless, in light of the breadth of the subpoenas, RTC's own Order of Investigation, and the governing legislation and caselaw, RTC's petition for emergency enforcement of the subpoenas *duces tecum* must be denied.

## III.  CONCLUSION

Accordingly, for the reasons expressed above, it is hereby

ORDERED that RTC's petition for expedited summary enforcement of administrative subpoenas *duces tecum* is denied.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

On May 7, 1992, the Resolution Trust Corporation ("RTC") petitioned the Court for expedited summary enforcement of eight subpoenas *duces tecum* served upon Ralph Feffer, Jr., Robert Amos, Leonard Goldman, Edward Janos, Gregory Janos, Lincoln J. Ragsdale, John Schroeder, and Milan Srnka, former directors and officers of Sun State Savings and Loan Association ("Sun State"), a failed savings association. The subpoenas seek eighteen categories of personal, financial documents: ·personal state and federal tax returns for the years 1987–1990; state and federal tax returns in any corporation in which respondent has more than a 5% ownership interest for the years 1987–1990; bank books, bank statements of accounts on any account on which respondent's name appears for the years 1987 to the present; all statements relating to ownership of an interest or shares in any mutual fund or bond fund for the period from 1988 to present; all statements of account regarding any participation in or ownership of an individual retirement account, 401 K, annuity, or any retirement benefit plan of any sort of which respondent is a beneficiary; a copy of all certificates of deposit with any bank, credit union, or financial institution on which respondent's name appears; all life insurance policies that have been enforced at any time during the period of 1987 to the present, wherein respondent is the named insured; registration and/or title to any automobiles, trucks, mobile homes, boats, or airplanes on which respondent's name appears as the owner; all stock certificates in any publicly traded company in which

---

**5.** At the oral hearing, RTC's counsel also suggested that the.agency may, at the time it files the civil complaints, seek an Order freezing respondents' assets.

**6.** "[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy." *Morton Salt*, 338 U.S. at 652, 70 S.Ct. at 368.

respondent possesses an ownership interest; all stock certificates in any "closed" or private corporation in which respondent has an ownership interest; all mortgage statements relating to the ownership of real property in which respondent has an interest; all contracts for the purchase or sale of real property, entered into since January 1, 1987; all bonds, debentures, treasury bills, or notes in which respondent has an interest; all employment contracts since January 1, 1988 to which respondent has been a party; all partnership agreements in any partnership in which respondent is a limited, general, or special partner; all trust instruments in any trust in which respondent is either the grantor or possesses a beneficial interest; and "[a]ll records of any sort relating to [respondent's] association or employment with American Holding Company, American Federal Savings & Loan Association, American Service Corporation, American Service Corporation Investment, Inc., including memoranda, correspondence, reports, loan files, notes, and any other documents that relate in any way to the business of those entities."

Following an oral hearing on June 4, 1992, the Court issued a Memorandum Opinion and Order, denying RTC's petition for summary enforcement. Specifically, the Court could not find "that the agency has been granted the authority to conduct an investigation of respondents' financial status solely to determine the cost-effectiveness of bringing a claim." Memorandum Opinion and Order, dated June 4, 1992, at 7–8.

The Court is now in receipt of RTC's motion for reconsideration. In particular, RTC argues, "The Court incorrectly concluded that the RTC's purpose in seeking respondents' financial information was '*solely* to determine the cost-effectiveness of bringing a claim,' and failed adequately to consider the RTC's arguments that the financial information is being subpoenaed to determine whether respondents had improperly transferred assets and whether to avoid such transfers and seek asset freezes." Memorandum of Points and Authorities in Support of Motion of Resolution Trust Corporation for Reconsideration

("RTC's Motion"), at 3 (citation omitted) (emphasis in original). For the following reasons, RTC's motion shall be granted in part.

## I.  DISCUSSION

In issuing its June 4, 1992 Opinion, the Court accepted the unrebutted representation of respondents' counsel that RTC had never before accused their clients of improperly transferring assets. As W. Scott Bales, one of the counsel for respondents, stated at the oral hearing, "I was shocked when Mr. Topinka told you that one of the rationales for their investigation is this possibility of seeking to set aside transfers of property, because that's something that's never been suggested by the RTC in any of its communications to counsel for respondents." Transcript of Show Cause Hearing ("Tr."), dated June 4, 1992, at 15. Similarly, David L. White, also counsel for respondents, explained, "Again, we've been told that the lawsuit will be brought for negligence and things of that sort. It is not an allegation of fraud. There has never ever been a claim that these people inappropriately transferred assets; no suggestion that there will be any effort to create a freeze. Nothing to that." Tr., at 22.

In reaching its June 4, 1992 decision, the Court was also impressed that counsel for RTC never countered the respondents' claims that the agency had never before alleged the wrongful transfer of assets. Rather, in rebuttal, RTC's counsel only emphasized that "[the governing statutory provisions] give this agency unique powers, and particularly give this agency the duty to bring cost-effective litigation" and that "[w]e need to understand their financial position, we need to understand that financial position before the 14th, when a complaint would have to be filed." Tr., at 25, 26.

The recent representations of RTC and supporting documentation alter the complexion of RTC's motion for summary enforcement. According to the affidavit of Peter A. Metters, which is attached to RTC's motion for reconsideration:

I was advised by an RTC Investigator that some of the respondents had created trusts since the appointment of RTC as

receiver for Sun State, to which they had conveyed assets of apparently substantial value. In a telephone conversation with [respondents' counsel] on March 3, 1992, I discussed ... the RTC's need for financial information. During the conversation, I stated that information establishing the current net worth of her clients would be insufficient because the RTC had received indications that some of the subpoena recipients may have taken steps to shelter assets from the reach of the RTC as a judgment creditor. I did not discuss with [respondents' counsel] the specific information I had obtained because I did not want to encourage respondents to take steps to make reaching assets more difficult. During our conversation, however, I referred to the RTC's statutory power to avoid improper transfers and I advised [counsel] that the RTC required financial information dating back a number of years in order to discover any improper transfers of assets.

Affidavit of Peter A. Metters ("Metters Aff."), attached as Exhibit ("Exh.") B to RTC's Motion, at ¶¶ 8–9.

It is undisputed that the RTC is given express authority to avoid improper asset transfers and to seek asset freezes pursuant to 12 U.S.C. §§ 1821(d)(17(A), 1821(d)(18). The agency's broad subpoena power may be used to carry out this authority by gathering information to determine whether any such transfers have occurred. In addition, the RTC's initial Order of Investigation states that the investiga-

tion was initiated to determine whether certain persons or entities "may be liable" as a result of their actions as officers and directors, and such language could encompass subpoenas for financial information to discover whether there have been any improper asset transfers.[1] As even respondents' counsel conceded at the show cause hearing on June 4, 1992, "[T]here is nothing in the RTC's own regulations that would authorize it to get this kind of information, especially in a case where they have made no assertion or no showing that there is some need for prejudgment discovery of assets because they think there has been fraud or an improper diversion of funds. *That would present a different situation, I would admit.*" Tr., at 17–18.[2]

Nonetheless, it does not appear that the subpoenas issued in this case need be enforced in their entirety to fulfill RTC's stated goal. In an effort to protect, albeit minimally, the privacy interests of the individual respondents, respondents are directed to produce the documents that comply with the subpoenas, which shall be revised as follows:

(a) Personal State and Federal tax returns for the years 1988, 1989, and 1990.

(b) State and Federal tax returns in any corporation in which respondents have more than a 5% ownership interest for the years 1988, 1989, and 1990.

(c) Bank books, bank statements of accounts, on any account on which your name appears for the time period of January 1, 1988 to the present time.

---

1. On June 11, 1992, the RTC issued a "formal" order, providing:

[A]ll previously issued Orders of Investigation were intended and understood to authorize RTC Professional Liability Section investigations that would evaluate not only whether the RTC might obtain a civil damage judgment against described parties but also (A) whether pursuit of civil litigation would be cost-effective, considering the extent of the potential defendant's ability to pay a judgment in any such litigation, (B) whether the RTC should seek to avoid a transfer of any interests or an incurrence of any obligations, and (C) whether the RTC should seek an attachment of assets.

In light of the Court's interpretation of the original Order of Investigation, it is unnecessary for the Court to discern what relevance, if any,

RTC's so-called clarifying Order has on this action.

2. In light of this Opinion, the Court need not discuss the impact of *FTC v. Invention Submission Corp.*, 965 F.2d 1086 (D.C.Cir.1992), on this cause. It is, however, interesting to note that *Invention Submission* involved, *inter alia*, subpoenas directed at a corporation. Here, respondents have voiced no objections to subpoenas directed at Sun State. Moreover, the privacy concerns applicable to the personal information demanded in the instant case may be substantially different from those concerns of a business entity. Thus, *Invention Submission* may not support RTC's efforts to roam through personal, financial information to determine if it is worthwhile to pursue litigation against individuals.

(d) All statements relating to your ownership of an interest or shares in any mutual fund or bond fund for the period of time from January 1, 1988.

(e) All statements of account regarding any participation or ownership of an I.R.A., 401 K, Keogh Plan, Annuity or any retirement benefit plan of any sort of which you are a beneficiary.

(f) A copy of all certificates of deposit with any bank, credit union, or financial institution on which your name appears.

(g) All life insurance policies which have been enforced at any time during the period of January 1, 1988 to the present wherein you are the named insured.

(h) Registration and/or title to any automobiles, trucks, mobile homes, boats, or airplanes on which your name appears as an owner.

(i) All stock certificates in any publicly traded company in which you possess ownership interest.

(j) All stock certificates in any "closed" or private corporation in which you have an ownership interest.

(k) All mortgage statements relating to the ownership of real property in which you have an interest.

(l) All contracts for the purchase or sale of real property entered into since January 1, 1988 to which you are a party.

(m) All bonds or debentures of any sort, whether corporate or municipal, or issued by any public entity in which you have an ownership interest.

(n) All treasury bills or notes in which you have an ownership interest.

(o) All employment contracts that you have been a party to since January 1, 1988.

(p) All partnership agreements in any partnership in which you are either a limited, general, or special partner.

(q) All trust instruments in any trust in which you are either the grantor or possess a beneficial interest.

(r) All records of any sort relating to your association or employment with American Holding Company, American Federal Savings & Loan Association, American Service Corporation, American Service Corporation Investment, Inc., including memoranda, correspondence, reports, loan files, notes, and any other documents that relate in any way to the business of those entities.

The Court is confident that the RTC, as a responsible governmental entity and as it assured the Court, will take all reasonable steps to protect the confidentiality of the information provided.[3]

## II. CONCLUSION

For the reasons expressed above, it is hereby

ORDERED that RTC's motion for reconsideration is granted in part; it is

FURTHER ORDERED that the respondents shall produce the relevant documents no later than July 22, 1992.

IT IS SO ORDERED.

---

**3.** As of this date, the Court has not been advised that civil complaints have been filed against respondents. Thus, the Court need not consider whether the initiation of civil actions would moot RTC's motion for summary enforcement.